IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PRISCILLA VILLINES,

    Plaintiff,

v.                                              Civil Action No. 3:10cv674

WALGREEN CO.,

    Defendant.

## **MEMORANDUM OPINION**

Before the Court is Defendant Walgreen Co.'s ("Walgreen") Motion for Summary Judgment. (Docket No. 23). Plaintiff Priscilla Villines has filed a response. (Docket No. 39.) The parties have waived oral argument, and the Court has determined that oral argument would not aid the decisional process.[1] The Court's jurisdiction is properly invoked under 28 U.S.C. §§ 1441, 1332,[2] and 636(c).[3] For the following reasons, the Court will GRANT Walgreen's Motion for Summary Judgment.

---

[1] The parties originally requested oral argument, but prior to the scheduled hearing, the undersigned Magistrate Judge discovered a potential conflict. The Court suspended all deadlines and court hearings, filed a judicial disclosure indicating that the Court thought no conflict existed, and provided the parties with the opportunity to object to this Magistrate Judge's continued participation. (Docket No. 48.) Neither party objected to this Magistrate Judge's continued participation (Docket Nos. 50, 51), and the parties thereafter indicated their desire to submit the motion to the Court on the briefs.

[2] The amount in controversy exceeds $75,000, and diversity of citizenship exists. 28 U.S.C. § 1332. Villines is a citizen of Washington, D.C., and Walgreen is an Illinois corporation with its principal place of business in Illinois. (Notice of Removal ¶¶ 5-6.) (Docket No. 1.)

[3] On November 15, 2010, pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a magistrate judge, and the Honorable Henry E. Hudson reassigned the case to the undersigned Magistrate Judge. (Docket Nos. 10, 11.)

# I. Factual and Procedural Background

## A. Undisputed Facts

On October 26, 2008, at approximately 3:00 p.m., Villines arrived at the Walgreens store located at 3520 Ellwood Avenue in Richmond, Virginia to do some shopping. While shopping, Villines approached Lela Lockhart, a Walgreens employee, to inquire about the location of soap. Lockhart escorted Villines down an aisle to show her the location of the soap. Lockhart and Villines walked side-by-side down the aisle for approximately ten to fifteen seconds, both looking at the shelving for the soap and not looking down at the ground. During that ten to fifteen seconds, Villines did not observe any other persons in the aisle. Then, Villines "just started falling, and [she] started reaching to catch [her] balance, and [she] just fell." (Pl.'s Opp'n Mem. Resp. Def.'s Mot. Summ. J. ("Pl.'s Opp'n Mem.") Ex. 2 ("Villines Dep.") 28:12-13.)

Villines believes that a coupon pad located on the floor caused her fall.[4] Walgreens

---

[4] Villines admits that she does not have any personal knowledge as to what caused her fall or what aisle number she fell in, but instead contends that an employee named Aaron wrote an incident report indicating that Villines slipped on a coupon pad located on the floor of Aisle 3. Villines testified that, prior to receiving a copy of the incident report, she did not know what had caused her fall and did not tell anyone a coupon pad caused her fall.
  Lockhart, on the other hand, testified that Villines fell in Aisle 2, noting that the shampoo and hair care products, which Villines knocked over during her fall, were located on Aisle 2 and not Aisle 3. Further, Walgreens employee Aaron Jones did not witness Villines's fall, but was later informed about the incident. Jones testified that, while investigating Villines's fall, Villines took him to Aisle 3, pointed to a coupon located on the floor of Aisle 3, and indicated that the coupon caused her fall. Based on Villines's statements, Jones filled out the incident report. Lockhart had already left for the day, but Lockhart later informed Jones that Villines's fall occurred on Aisle 2, instead of Aisle 3. Jones testified that, to his knowledge, no coupon was located on Aisle 2.
  In summary judgment briefing, Walgreen contends that Villines has failed to create a genuine dispute of fact such that a reasonable juror could conclude that she actually slipped on a foreign substance, namely a coupon pad. Walgreen acknowledges that Villines attempts to create material and genuine disputes of fact as to the existence of the coupon pad through the submission of her affidavit, but contends that the Court should disregard the entire affidavit

2

displays coupons near the applicable products, and the coupons rarely fall from the displays. However, Villines never saw the coupon, either before or after her fall. Villines cannot describe the coupon or its location at the time of her fall. Likewise, Lockhart did not see the coupon on the floor prior to or after Villines's fall. After the accident, Lockhart only saw shampoo and conditioner bottles on the floor that Villines had knocked over during her fall. Villines and Lockhart do not know how long the coupon was on the floor, when it got on the floor, or how it got on the floor.

After Villines's fall, Lockhart helped Villines get up and showed her the location of the soap. Villines retrieved the soap and proceeded to checkout at the cash register. Villines informed the cashier about her earlier fall in the soap aisle. The cashier "indicated that she was cleaning that aisle earlier that morning and that the store got busy and she had . . . to work at the cash register." (Villines Dep. 31:2-5.) The cashier did not indicate that there had been a coupon pad on the floor, but instead indicated that she was cleaning up trash on the floor. The cashier informed Villines that she needed to make a report and then called for a manager.

---

because it conflicts with her prior deposition testimony. However, a review of Villines's affidavit alongside the portions of her deposition testimony made available to the Court reflects that her affidavit supplements rather than contradicts her deposition testimony. The Court thus declines to strike Villines's affidavit as a sham affidavit. Because genuine disputes of material fact exist as to whether a coupon pad caused Villines's fall, the Court declines to reach this issue on summary judgment.

Walgreen argues in the alternative that even assuming a coupon pad caused Villines's accident, Walgreen is entitled to summary judgment as a matter of law because, based on the undisputed evidence, Walgreen did not have actual or constructive notice of the coupon pad on the floor. The Court thus presumes, for summary judgment purposes, that a coupon pad was present on the floor of the aisle in which Villines's accident occurred. Given this presumption, any disputes as to which aisle Villines's accident occurred in and as to whether a coupon pad caused the accident are thus immaterial.

3

Jones, the manager on duty, responded to create the report. Jones first asked if Villines needed medical attention, but she declined. Villines then informed Jones about her accident and showed both Jones and the cashier where the fall occurred. Jones went to his office for about twenty minutes and then returned to ask Villines a few questions. Jones then went back to his office for approximately ten minutes before again returning to ask Villines more questions. Jones then wrote an incident report and gave Villines a copy. The incident report states: "Customer slipped on an easysaver coupon pad that was lying on the floor in the back of [A]isle 3." (Pl.'s Opp'n Mem. Ex. 3.)

B.  **Procedural Background**

After her fall, Villines filed a complaint in the Circuit Court for the City of Richmond against Walgreen, seeking $250,000 in compensatory damages. Villines asserts that Walgreen negligently failed to eliminate or warn of a hazardous condition on the floor about which it knew or, by the use of ordinary care, should have known. Walgreen timely filed an answer. On September 23, 2010, Walgreen filed a Notice of Removal in this Court.

Walgreen now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). Walgreen argues that Villines can present no admissible evidence demonstrating that Walgreen was on notice, actual or constructive, about the existence of the coupon on the floor prior to Villines's fall. In response, Villines attempts to show actual notice based on the cashier's admission that she had previously cleaned up trash on the aisle in which Villines fell. Villines also asserts that she has presented sufficient evidence of constructive notice to overcome summary judgment based on the proximity of a Walgreens employee at the time of Villines's fall.

## II. Standard of Review

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled to have 'the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex*, 477 U.S. at 323-24).

## III. Analysis

A court exercising diversity jurisdiction applies the substantive law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Cole v. Food Lion, L.L.C.*, 370 F. Supp.

2d 434, 436 (E.D. Va. 2005). In Virginia, to establish a prima facie negligence claim, a plaintiff bears the burden of proving "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003); *see also Trimyer v. Norfolk Tallow Co.*, 66 S.E.2d 441, 443 (Va. 1951). As the Supreme Court of Virginia has articulated, "[t]he rules applicable to slip-and-fall cases are well settled." *Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 650 (Va. 1990).

> "The [store owner] owed the [customer] the duty to exercise ordinary care toward her as its invitee upon its premises. In carrying out this duty it was required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the [customer] of the unsafe condition if it was unknown to her, but was, or should have been known, to the [store owner]."

*Id.* (*quoting Colonial Stores v. Pulley*, 125 S.E.2d 188, 190 (Va. 1962)) (alterations in original).

A prima facie case of premises liability requires first that the plaintiff prove the existence of an unsafe or dangerous condition. *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 451 (4th Cir. 2004). Next, "a plaintiff must, in order to establish a defendant's negligence, prove '*why* and *how* the incident happened.'" *Id.* at 451 (*quoting Town of West Point v. Evans*, 299 S.E.2d 349, 351 (Va. 1983)). Where a plaintiff lacks evidence as to why an injury occurred, he or she may present evidence of the defendant's actual or constructive notice. *Id.* at 452.

### A. Actual Notice

Villines fails to establish that Walgreen had actual notice of the unsafe condition that resulted in her fall. In an attempt to create a genuine dispute as to actual notice, Villines points to a Walgreens "cashier's admission that she had not completed cleaning up trash in the aisle where [Villines] fell." (Pl.'s Opp'n Mem. 12.) However, according to the record before the Court, this

assertion of a "material fact in dispute" is based on inferences beyond those this Court may draw under the Federal Rules of Evidence or under summary judgment standards, even when viewing the facts favorably to Villines. *See Sylvia Dev. Corp.*, 48 F.3d at 818.

The evidence before this Court does not contain any admission from a Walgreens cashier that she had not completed cleaning and had instead left the coupon pad that presumably caused Villines's fall on the floor. Instead, Villines testified that the cashier indicated she was cleaning that aisle earlier that morning due to trash on the floor. Because "the store got busy," the employee was called to the cash register. (Villines Dep. 31:3-5, 32:3-4.) The cashier did not admit or suggest she did not complete her cleaning duties. Nor did she indicate she saw a coupon pad on the floor. Further, any cleaning occurred "earlier that morning" (Villines Dep. 31:3), while Villines's accident occurred around 3:00 p.m. The record demonstrates that business picked up during this interval. These undisputed facts create a far more reasonable inference that a customer (who would be more likely to be dealing with coupons than a store employee) dropped the coupon pad in the span between the cashier's cleaning and Villines's accident, than they do that the coupon was left by the cashier several hours earlier.

Villines, nonetheless, attempts to create a material dispute by encouraging the Court to infer the cashier did not complete her cleaning duties, infer she left trash on the floor, and infer the trash included the coupon pad that caused Villines's fall. However, "[g]enuine issues of material fact cannot be based on mere speculation or the building of one inference upon another." *Barwick v. Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984). Viewing the evidence in the light most favorable to Villines and considering competing inferences to the contrary, the Court cannot make a reasonable inference from the record that the cashier had actual notice of the presence of

the coupon pad that caused Villines's fall. *See Anderson*, 477 U.S. at 255; *Sylvia Dev. Corp.*, 48 F.3d at 818. The record before the Court is bereft of any evidence that would give rise to a reasonable inference suggesting that Walgreen placed the coupon on the floor or that Walgreen knew of the coupon on the floor prior to Villines's fall. Therefore, Villines must establish that Walgreen had constructive notice of the unsafe condition resulting in her injuries. *See Pulley*, 125 S.E.2d at 190.

B. <u>Constructive Notice</u>

In an attempt to overcome summary judgment, Villines contends that the proximity of Lockhart at the time of Villines's fall creates a jury issue as to whether or not Walgreen should have seen the coupon pad on the floor in time to warn Villines about its presence. However, as discussed below, even viewing the evidence most favorably to Villines, the undisputed evidence fails to give rise to a reasonable inference that Walgreen had constructive notice of the unsafe condition resulting in her fall. Because no admissible evidence exists regarding the location or the description of the coupon that caused Villines's fall, and no evidence before the Court gives rise to a reasonable inference as to when the unsafe condition developed, Villines, as a matter of law, cannot establish a prima facie case of negligence.

To prove constructive notice, a plaintiff must introduce "evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition."[5] *Grim v. Rahe, Inc.*, 434 S.E.2d 888, 890 (Va. 1993). Here, Villines has

---

[5] Citing *Austin v. Shoney's Inc.*, 486 S.E.2d 285 (Va. 1997), Villines contends that "[a] defendant is charged with constructive notice of a hazard if it failed to exercise reasonable care to avoid the genesis of the danger." (Pl.'s Opp'n Mem. 4-5.) Based on the facts of this case, Villines's reliance on *Austin* is misplaced.

failed to point to any evidence that would give rise to a reasonable inference as to how the coupon pad got on the floor and how long it remained on the floor. Likewise, she has failed to present any admissible evidence about the location or the description of the coupon that caused her fall. Virginia law requires that she do so to carry her burden of proving that Walgreen was on constructive notice. *Id.*; *Parker*, 396 S.E.2d at 651; *Pulley*, 125 S.E.2d at 190 (stating that it was "incumbent upon the plaintiff to prove that the defendant knew [the dangerous condition] was there, or, to show that the [item] had been there long enough that the defendant ought to have known of its presence"). "Hence, if the evidence fails to show *when* a defect occurred on the premises, the plaintiff has not made out a *prima facie* case." *Grim*, 434 S.E.2d at 890 (*citing Parker*, 396 S.E.2d at 651). Likewise, if the evidence fails to show that the defect was noticeable, the plaintiff has not made out a prima facie case. *Id.*

---

Virginia law distinguishes between cases where a plaintiff alleges negligence from a defendant's "affirmative conduct," and cases where a plaintiff alleges negligence from a defendant's "passive conduct." *See Ashby v. Faison & Assocs., Inc.*, 440 S.E.2d 603, 605 (Va. 1994). Allegations of "affirmative conduct" involve cases in which a defendant was the "genesis" of the dangerous condition. *Goehler v. Wal-Mart Stores, Inc.*, No. 99-2057, 2000 WL 1161700, at *2 (4th Cir. Aug. 17, 2000) (unpublished). In "affirmative conduct" cases, notice is found where "'an ordinarily prudent person, given the facts and circumstances [the defendant] knew or should have known, could have foreseen the risk of danger resulting from such circumstances.'" *Id.* (*citing Memco Stores, Inc. v. Yeatman*, 348 S.E.2d 228, 230 (Va. 1986)) (alteration in original). In addition, "the foreseeability of the danger . . . [is] the relevant question for [a] jury to consider in determining whether [a] defendant [has] been negligent." *O'Brien v. Everfast, Inc.*, 491 S.E.2d 712, 715 (Va. 1997) (*citing Holcombe v. NationsBanc Fin. Servs. Corp.*, 450 S.E.2d 158, 160 (Va. 1994)) (finding knowledge of the potential danger created by bolts of fabric leaning on a cutting table sufficient to support a jury finding of negligence).
Because the record before the Court contains no evidence that would allow a reasonable inference that the coupon on the floor resulted from Walgreen's affirmative conduct, Villines's reliance on "affirmative conduct" cases is unpersuasive.

Even presuming the coupon lay on the floor where the fall occurred, the record is bereft of any evidence as to the how the coupon got on the floor, when it got on the floor, or how long it remained on the floor prior to Villines's fall.

> "There is no evidence in this case that [the defendant] knew of the presence of the [item] on the floor, nor is there any showing of the length of time it may have been there. It is just as logical to assume that it was placed on the floor an instant before [the plaintiff] struck it as it is to infer that it had been there long enough that [the defendant] should, in the exercise of reasonable care, have known about it."

*Parker*, 396 S.E.2d at 651 (*quoting Pulley*, 125 S.E.2d at 190). Absent evidence of when the unsafe condition was created, Villines cannot establish that a sufficient amount of time passed to provide Walgreen constructive notice of the condition, which is a required component of her prima facie case. *See Hodge*, 360 F.3d at 454.

Further, no admissible evidence exists as to the color, size, or location of the coupon prior to Villines's fall.[6] In fact, neither Villines nor Lockhart observed the coupon prior to or subsequent to Villines's fall. *See Ashby v. Faison & Assocs., Inc.*, 440 S.E.2d 603, 605 (Va. 1994) (noting that no one, not even plaintiff, knew of the dangerous condition beforehand, and thus, the plaintiff failed to establish actual or constructive knowledge). Viewing the evidence in a light most favorable to Villines and considering competing inference to the contrary, the Court cannot make a reasonable inference from the record that the coupon was readily visible or noticeable. *See Anderson*, 477 U.S. at 255; *Sylvia Dev. Corp.*, 48 F.3d at 818.

---

[6] In an attempt to provide the Court with a description of the coupon, Villines attaches to her Opposition Memorandum an unauthenticated photograph (Pl.'s Opp'n Mem. Ex. 6), claiming it to be "[a]n exemplar of the coupon pad produced by Defendant" (Pl.'s Opp'n Mem. 7). Absent proper authentification and a proper admission from Walgreen that such coupon is similar to the coupon pad Villines allegedly slipped on, the photograph constitutes inadmissible evidence. *See Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993).

In arguing otherwise, Villines relies on cases that are factually distinguishable. In *Miracle Mart*, a customer followed directly behind an employee who blocked her view, after which she slipped on a dangerous substance on the floor. *Miracle Mart, Inc. v. Webb*, 137 S.E.2d 887, 889 (Va. 1964). The employee admitted that the substance was on the floor and stated that he could have seen the substance had he been looking. *Id.* The Supreme Court of Virginia held: "In this instance the jury had a right to conclude that had the assistant manager of the department been keeping a proper lookout he could have seen this dangerous substance in time to warn the customer of its presence." *Id.* at 890.

In *Myers*, a customer slipped on grapes located on the floor. *Myers v. Kroger Co.*, No. 7:08cv402, 2009 WL 251953, at *1 (W.D. Va. Feb. 2, 2009). A nearby employee admitted he had stocked grapes ten minutes earlier and he should have seen the grapes on the floor. *Id.* at *2. Further, the employee did not recall seeing any other customers in the store at that time. *Id.*

Unlike in *Miracle Mart* and *Myers*, no evidence exists on the record before this Court upon which a jury could conclude that Lockhart, or any employee, should have seen the coupon and warned Villines about its presence. *See Prindes v. Winn-Dixie Raleigh, Inc.*, No. 96-1636, 1997 WL 195920, at *1-2, 5 (4th Cir. Apr. 23, 1997) (finding no constructive notice even though employees were located in same aisle where customer slipped on a readily observable liquid substance); *Gauldin v. Va. Winn-Dixie, Inc.*, 370 F.2d 167, 170 (4th Cir. 1966). The record is simply devoid of any description of the coupon or its location at the time of the fall.[7] The record

---

[7] Villines's assertion that the time period when Lockhart and Villines walked down the aisle together suffices for notice does not persuade the Court. Villines contends that ample evidence exists from which a jury could conclude that the coupon was present on the floor during the ten to fifteen second time period in which Lockhart and Villines walked down the aisle. Villines asserts that she did not observe any other people in the aisle and did not hear the sound

11

contains no admission that the coupon should have been seen by Lockhart or any other employee. Further, in this case, Lockhart did not block Villines's view of the aisle, and Villines herself did not notice the coupon before or after her accident. Finally, unlike in *Myers*, the facts of this case do not "foreclose the possibility that a third party had created the dangerous condition," especially given that it is a more reasonable inference that a customer hoping to benefit from the coupon's savings removed or carried the coupon pad around Walgreen, rather than an employee. *Harrison v. Kroger Co.*, 737 F. Supp. 2d 554, 560 (W.D. Va. 2010).

Based on the undisputed, admissible evidence presented in this case, this Court finds, as a matter of law, that Villines has failed to demonstrate constructive notice. To hold otherwise "would, in effect, make the defendant an insurer of the safety of its customers." *Gauldin*, 370 F.2d at 170. Therefore, the Court will GRANT Walgreen's Motion for Summary Judgment.

---

of a coupon pad falling to the floor. Further, Villines contends that the cashier's statement about the interrupted cleaning "suggests that the coupon pad was present when [Villines and Lockhart] walked down the aisle." (Pl.'s Opp'n Mem. 9.) Because coupons rarely fall from the display case, Villines encourages the Court to assume the coupon was present at the moment Villines and Lockhart proceeded down the aisle.
 Villines again attempts to build inference upon inference, and in doing so, she ultimately bases an alleged material dispute on nothing more than speculation. *Barwick*, 736 F.2d at 963. Even viewing the evidence most favorably to Villines, Villines stretches the inferences she asks the Court to draw beyond the logical, especially considering the competing inferences that must be drawn because neither person saw a coupon pad at the moment of her fall, or immediately afterward. (*See* Def.'s Mem. Supp. Mot. Summ. J. Ex. B, Lockhart Dep. 24:1-11 (testifying she only saw shampoo and conditioner bottles on the floor after Villines's fall).) Villines has not presented sufficient evidence as to when the unsafe condition was created to overcome summary judgment.

## IV. Conclusion

For the foregoing reasons, the Court will GRANT Walgreen's Motion for Summary Judgment. (Docket No. 23.)

An appropriate Order shall issue.

/s/ M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 5-6-11